IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Bettcher Industries, Inc., | Case No. 3:08 CV 2423 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Bunzl Processor Distribution, LLC, | |
| Defendant. | |

This Order supplements the record hearing and this Court's June 9, 2010 ruling (Doc. No. 223) on Defendant's various Motions in Limine regarding damages (Doc. Nos. 134, 180, 182, 191).

The Court confirms that the parties can present evidence whether Hantover was an acceptable non-infringing substitute, and that the parties can also present evidence whether Bettcher's alleged lost profits should be reduced by Hantover's share of the market.

## PROVING DAMAGES UNDER *PANDUIT*

Under *Panduit*, in order to recover lost profits, Bettcher must prove (1) demand for the product, (2) absence of acceptable non-infringing substitutes, (3) Bettcher's ability to meet the demand, and (4) the amount of profit Bettcher would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). The parties' dispute is about the second element, which is a formulation of "but for" causation. That element can be modified to include a "market share" analysis, i.e., *but for* the infringer's sales, a plaintiff would have had more sales, based on its share of the market. *See BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993). Essentially, the market share analysis reduces recoverable lost profits based on what other

players in the market were doing. Thus, the market share analysis is similar to the traditional *Panduit* analysis, and both theories require similar types of proof. The touchstone of both analyses is whether a plaintiff can prove "with reasonable probability sales it would have made 'but for' the infringement." *BIC Leisure*, 1 F.3d at 1219.

The specific dispute here is about how to treat the evidence of Hantover's participation in the market. Under the *Panduit* and *BIC Leisure* framework, the jury could draw one of three conclusions from the evidence regarding Hantover. First, the jury could conclude that the Hantover blade is not an acceptable non-infringing substitute, meaning that Bettcher would be entitled to all lost profits due to Bunzl's sales. Second, the jury could conclude that Hantover was a factor in the market, but that Bettcher would still have captured a portion of the Bunzl blade sales according to Bettcher's market share (diminished because of Hantover's presence in the market). Third, the jury could conclude that Hantover's presence in the market means that Bettcher cannot prove but-for causation at all, because all of Bunzl's sales might have gone to Hantover instead of to Bettcher. Bunzl's various motions argue that under the facts of this case, only the third conclusion (no lost profits) is a legitimate possibility.

**Bettcher's "Admission" That Hantover Is An Acceptable Substitute**

As to the first option (Hantover not an acceptable non-infringing substitute), Bunzl argues that Bettcher has *admitted* that Hantover blades are an acceptable substitute. Bunzl points to statements at the preliminary injunction hearing by Plaintiff's counsel that Hantover's presence in the market would keep prices low if Bunzl were enjoined from selling its blades. But that statement should not be construed as a binding admission on this issue. Counsel was not talking about Bettcher's lost profits, and Hantover's true effect on the market (if any) is a fact-intensive issue. Bunzl also points

2

to evidence that one Bettcher customer switched to Hantover blades for a period of time in 2008. However, this one piece of evidence, by itself, does not inevitably lead to the conclusion that Hantover blades are an "acceptable" substitute. The record has a considerable amount to say on that subject -- performance of Hantover blades, sales data, expert testimony -- and the jury can appropriately consider arguments from both sides. Bunzl is free to present evidence of the Hantover sales and urge the jury to find that Hantover is an acceptable substitute.

### Evidence of Market Share

As to the second option (market share), Bunzl argues that Bettcher has chosen the "all or nothing" theory under *Panduit*, and that it cannot now switch to a market share theory. Bettcher (for obvious reasons) indeed prefers the argument that it would have captured 100% of Bunzl's sales. But it does not follow that Bettcher's preferred theory *precludes* it from arguing an alternative market share theory. As a conceptual matter, the two theories are not incompatible. The market share theory is still a "but for" theory in which Bettcher's lost profits would simply be reduced by Hantover's market share (e.g., because Hantover might have captured 10% of Bunzl's sales, Bettcher can only recover 90%).

### LACK OF PREJUDICE

Bunzl claims "surprise" with the market share theory. However, as indicated above, evidence of market share goes hand in hand with Hantover's presence in the market -- a fact known by the parties even before the filing of this lawsuit. No case requires elaborate expert testimony to establish a market share theory, particularly when the market has a simple structure, as Bettcher argues is the case here. Bettcher has sales data from Hantover, Bunzl, and Bettcher; it would not be difficult to come up with relative percentages and apply a market share theory to those numbers. That is the basic

3

approach taken by the court in *BIC Leisure*, 1 F.3d at 1219. Ultimately, the *BIC Leisure* court found that under the particular facts of the case, the plaintiff had not established "but for" causation. *Id.* But Bunzl has cited no legal principle that would prevent Bettcher from at least attempting to present such a theory. If it turns out at trial that Bettcher's evidence is insufficient for either theory, the jury can be instructed appropriately. In any event, the Court has allowed Defendant some additional "breathing room" to take Plaintiff's expert's deposition, if necessary, thereby eliminating any potential prejudice.

## CONCLUSION

For the above reasons, the Court affirms its Order denying Defendant's Motion in Limine.

IT IS SO ORDERED.

                                               s/ *Jack Zouhary*
                                               JACK ZOUHARY
                                               U. S. DISTRICT JUDGE

                                               June 15, 2010